UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JACK F. B.,[1]

                                 Plaintiff,                DECISION AND ORDER

-vs-

                                                        1:20-CV-1195 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Aug. 2, 2021, ECF No. 13; Def.'s Mot., Dec. 28, 2021, ECF No. 14. Plaintiff argues that the ALJ's failure to incorporate limitations for migraine headaches into his determination of Plaintiff's residual functional capacity is error and not supported by substantial evidence. Pl. Mem. of Law, 18–19, Aug. 2, 2021, ECF No. 13-1. The Commissioner disputes Plaintiff's contentions. Def. Mem. of Law, Dec. 28, 2021, ECF No. 14-1. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 13] is denied, the Commissioner's motion [ECF No. 14] is granted, and the Clerk of Court is directed to close the case.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed his DIB application in August 2016, alleging a disability onset date of March 31, 2016. Transcript ("Tr."), 284, Mar. 3, 2021, ECF No. 11. Plaintiff alleged that his ability to work was limited by torn ligaments in his right ankle, high blood pressure, asthma, fluid around his heart, and migraines. Tr. 301. In October 2016, the Commissioner notified Plaintiff of the determination that Plaintiff was not disabled, and that he did not qualify for DIB benefits. Tr. 193. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 199.

Plaintiff's request was approved, and Plaintiff appeared with his counsel for a hearing before the ALJ via videoconference in August 2018, and an impartial vocational expert also joined by phone. Tr. 126–27. Prior to the hearing, Plaintiff's attorney submitted a brief in which she argued that Plaintiff "is unable to maintain minimal standards of attendance, pace, and productivity in the competitive economy due to his frequent asthma exacerbations and debilitating migraine headaches." Tr. 408. During the course of the hearing, Plaintiff testified that he stopped working while he was employed by a nursing home because he sprained his ankle in 2016. Tr. 130. Prior to working in the nursing home, he had held jobs at Wendy's as a cashier, at a family restaurant as a line cook and kitchen manager, and at a number of security companies as a guard. Tr. 144–45.

Plaintiff also testified that he has not had surgery to repair his injured ankle because his insurance will not cover it. Tr. 131. However, he said the main reason that

he is unable to return to work is that his "asthma is real bad," and that he frequently experiences lightheadedness, dizziness, and a lot of coughing when his asthma is exacerbated. Tr. 132, 139. He also said he gets migraines once or twice a week, usually after an asthma attack. Tr. 137.

Despite these limitations, Plaintiff testified that had joined a gym and had lost three pounds walking the treadmill and riding the bike. Tr. 134. He also helps with the chores around his apartment, including vacuuming, doing dishes, cooking, and going grocery shopping. Tr. 135. He can dress and bathe himself, drive, take his son to Boy Scout meetings, use a computer and an iPhone, visit family daily, and take his dad to doctors' appointments. Tr. 133–37. Plaintiff attempted to return to work in 2017 at Liberty Motors, but said he had to leave because was having too many asthma attacks to sustain his employment. Tr. 140–41. He also had to stop volunteering with the local fire company. Tr. 141.

In February 2019, Plaintiff again appeared with counsel before the ALJ. Counsel had expressed concerns regarding a medical expert's responses to an interrogatory submitted by the ALJ, seeking a medical source statement of Plaintiff's ability to do work-related activities based upon a review of Plaintiff's records. Tr. 156, Tr. 741–46. Dr. Steven Goldstein, the medical expert who completed the medical source statement, was therefore present at the February 2019 hearing so that Plaintiff's counsel could "obtain proper medical expert testimony." Tr. 413. Dr. Goldstein testified that he was a board-certified doctor in "internal medical and neurology." Tr. 157. He testified that he had reviewed all of the medical records in evidence, and the main limitation he recorded for asthma was that Plaintiff should not be exposed to "concentrated pulmonary irritants" in

3

a dusty environment, but that an office environment would not have those irritants. Tr. 162–63. He also testified that he did not see any instances of severe migraines in the record that would impair Plaintiff's ability to concentrate. Tr. 165.

On March 22, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 118. In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through March 31, 2021. Tr. 112. At step one of the Commissioner's "five-step, sequential evaluation process,"[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of March 31, 2016. Tr. 112. At step two, the ALJ determined that Plaintiff has several severe impairments: right ankle ligament tear, asthma, migraines, and obesity. Tr. 112. The ALJ also noted that there was objective evidence in the medical record of gastroesophageal reflux disease (GERD) and mild sleep apnea, both of which the ALJ found to be non-severe. Tr. 113. At step three, the ALJ determined that Plaintiff does not have an impairment or

---

[2] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 113.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [H]e can lift up to 20lbs occasionally and 10lbs frequently; he can stand or walk for 6 hours of an 8-hour workday; he can sit for 6 hours of an 8-hour workday; he can never climb ladders, ropes, or scaffolds; he can never crawl; he can only occasionally balance, stoop, kneel, crouch, or climb stairs or ramps; he can frequently, but not continuously reach, overhead reach, handle, finger, and feel with either/both hands; he must avoid all exposure to extreme cold, extreme hot, and excessive vibration; he must avoid concentrated exposure to humidity, unprotected heights, hazardous machinery, and respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; and he is limited to performing simple, routine tasks.

Tr. 113. Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work. Tr. 117. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a mail sorter, bagger, or sealing machine operator. Tr. 118. Hence, the ALJ concluded that Plaintiff *is not* disabled. Tr. 118.

On July 8, 2020, the Commissioner's Appeals Council denied Plaintiff's request to review the ALJ's decision. The ALJ's decision thus became the "final decision" of the Commissioner.

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are

applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

In the present case, Plaintiff raises a single argument for review by the Court. Plaintiff maintains that the ALJ erred in his RFC determination by failing "to explain why he did not adopt limitations related to the frequency and impact of Plaintiff's migraines and improperly relied solely on his lay opinion regarding Plaintiff's response to treatment." Pl. Mem. of Law at 11. The Commissioner counterargues that the ALJ properly considered Plaintiff's migraine headaches in assessing his RFC, and that the RFC relied on substantial evidence in the record. Def. Mem. of Law, 6, Dec. 28, 2021, ECF No. 14-1. The Court agrees with the Commissioner that the ALJ did not err, and that the RFC finding was supported by substantial evidence.

Legal Principles

Under the Commissioner's regulations, the ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In

general, the claimant has the burden to provide the evidence for the ALJ to use to make an RFC determination. *Id.* In making the RFC determination, the Second Circuit has consistently warned ALJs not to "arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, a medical opinion providing the specific restrictions reflected in the ALJ's RFC determination is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). 20 C.F.R. § 404.1527(d)(2) makes clear that the claimant's RFC is an issue reserved to the Commissioner, and it is well-settled that it is "within the province of the ALJ to resolve" conflicting findings in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Application

Here, the ALJ's RFC determination is based on sufficient evidence. Plaintiff specifically challenges the ALJ's failure to incorporate limitations for migraine headaches into his RFC. With respect to migraines, the record shows that Plaintiff visited the emergency department at Mercy Hospital in June 2015 complaining of a headache. Tr. 480. He indicated that he had problems with migraines approximately 10 years before, but Dent Neurology had prescribed him a medication to take at the onset of his migraines, and "he hasn't had too many problems since." Tr. 480. Thus, the main reason for his visit to the emergency department was because he went to his car while at work, and was seen taking 800 mg of ibuprofen. Tr. 480. His employer apparently had had prior problems

with individuals doing drugs on the job, so his supervisor informed him that he needed a doctor's note confirming Plaintiff's need for the pills in order to come back to work the next day. Tr. 480. The emergency room duly issued him a note.

The record also reflects that Plaintiff consulted with registered physician's assistant Karly A. Benamati ("PA Benamati") at the Dent Neurologic Institute in January 2016. Tr. 452. The treatment notes from that consultation confirmed that Plaintiff had been seen by Dent for migraines in the past, but that Plaintiff had "been almost headache free" until two months prior to his January 2016 consult. Tr. 452. After an examination, PA Benamati assessed Plaintiff as having episodic migraines without aura that may be triggered by "an odor or certain perfume of one of the residents" on the third floor of the nursing home he worked in. Tr. 453. She issued Plaintiff a prescription for medication to take at the onset of his migraine, recommended he stop taking ibuprofen, and suggested a follow-up in two to three months. Tr. 454.

Plaintiff was seen by Laszlo Mechtler, M.D. in June 2017 for migraines. Dr. Mechtler indicated that they had "broke[n] the cycle of pain and [Plaintiff] has responded very well to [medication] and has gone many months without any significant headaches," until a recent "exacerbation of headache." Tr. 582. He reported that in the wake of the exacerbation, Plaintiff had again "responded to" the same medication, and he was "back to his baseline." Tr. 582. Dr. Mechtler concluded that it was again an "episodic migraine," noted that Plaintiff had admitted that he was under stress due to a situation with his son, opined that Plaintiff was "doing quite well," and recommended a follow-up in six months. Tr. 583.

In December 2017, Plaintiff was re-evaluated by PA Benamati. She noted Plaintiff's treatment by Dr. Mechtler six months ealier, and stated that Plaintiff "returns today improved. He's been out of work for about the past year due to an ankle injury. He has had less migraines . . . . [and] now has about 1 migraine a month that responds well to [medication]." Tr. 716. PA Benamati again assessed Plaintiff as having "episodic migraines," recommended that he continue taking his prescription medication at the onset of a migraine, and indicated that he should return in one year for a follow-up. Tr. 717.

At the supplemental hearing before the ALJ in February 2019, the medical expert, Dr. Steven Goldstein, testified that he had reviewed Plaintiff's medical record. Tr. 158. He indicated that the medication prescribed to Plaintiff for his headache was meant to be taken "at the beginning of the migraine . . . and the purpose of that is to thwart the headache." Tr. 167. Dr. Goldstein also noted that a "migraine is a very common malady in our society," (Tr. 164), and stated that in his experience 90 percent of the people under the care of a neurologist for migraines "complain loud and long about how terrible their migraines are . . . . but they're able to follow demands . . . . are able to function." Tr. 165. The other 10 percent of patients are not like that, but instead "wind up in the emergency room . . . . [and t]hose are the patients that are really impaired in terms of ability to work." Tr. 165. In Plaintiff's record, Dr. Goldstein "didn't see any severe migraines, in the sense that impaired . . . [Plaintiff's] ability to concentrate." Tr. 165.

In short, substantial evidence in the record supports the ALJ's decision not to include limitations from migraines in Plaintiff's RFC. Accordingly, the Court finds that although the ALJ's RFC determination did not perfectly correspond with a medical opinion in the record, the ALJ did not err. The ALJ weighed the evidence available and made an

RFC finding that was both supported by substantial evidence, and consistent with the record as a whole. *See, e.g., Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 13] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk is directed to close this case.

DATED:    August 25, 2022
                Rochester, New York

                                                    CHARLES J. SIRAGUSA
                                                    United States District Judge